IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CT-3055-FL

| | |
|---|---|
| WILLIAM J. NEAL, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| DWAYNE DEAN, L.D. BETHEA, ) | |
| BRYANT CANADY, CHRISTOPHER ) | |
| ROGERSON, CHRISTINA MUMMA, ) | |
| C. BRANSON VICKORY, III, J. ) | |
| MICHAEL RICKS, OFFICER ROBERT ) | |
| T. SMITH, and DIANE HAMILTON, ) | |
| ) | |
| Defendants. ) | |

This matter, brought pursuant to 42 U.S.C. § 1983, is before the court on defendants' respective motions to dismiss (DE 17, 19, 31, 53, 55) under Federal Rule of Civil Procedure 12(b)(6). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants defendants' motions.

**BACKGROUND**

On April 27, 2010, in the Wayne County Superior Court, plaintiff was found guilty, following a jury trial, of the following: (1) first-degree statutory rape; (2) first-degree sex offense; (3) first-degree burglary; and (4) indecent liberties with a child. State v. Neal, No. COA 11-110, 2011 WL 4552589, at *1 (N.C. App. 2011). On April 28, 2010, the trial court sentenced plaintiff to the following consecutive terms of imprisonment: (1) life imprisonment on the first-degree rape conviction; (2) life imprisonment on the first-degree statutory sexual offense conviction; (3) life

imprisonment on the first-degree burglary conviction; and (4) 10 years on the charge of indecent liberties with a minor conviction. Id.

Plaintiff then filed a notice of appeal to the North Carolina Court of Appeals. See id. The court of appeals found the following facts:

> On 21 August 1987, a man climbed through the second-floor balcony of an apartment and raped an N.C. State student. The rape occurred during the early morning hours, while one of the student's roommates was in another room of the apartment. The man held a knife to the student's throat, and he removed her clothing. The man told her not to make a sound or he would kill her. The student reported the rape to the Raleigh police. She described the man as a white male, with dirty-blond hair, a beard, a mustache, and a strong country accent. The student was taken to Rex Hospital, and a rape examination was completed. The examination indicated that the student received no physical injury from the rape.
>
> Defendant was identified as a suspect. Defendant was initially considered a suspect because he had been arrested in the area and charged with three counts of peeping tom. Defendant was later acquitted of the peeping tom charges.
>
> Two pubic hairs were found on the student's comforter. Raleigh police took a pubic hair sample from defendant. These hairs were found to be consistent with the hairs found on the comforter. On 21 August 1987, defendant was indicted. Prior to trial, the student planned to move to Charleston to begin work, and she did not wish to testify. The student hired an attorney, and she instructed the attorney to request that all charges against defendant be dropped. On 22 February 1990, the charges against defendant were dropped.
>
> On 4 September 1987, a man climbed through the window of an apartment and raped a twelve-year-old girl. The rape occurred during the early morning hours, while the girl's brother and mother were in another room in the apartment. The man held a knife to the girl's throat, and he removed her clothing. The man told the girl to be quiet, and he would not hurt her. The girl described the man who raped her as a white male, with dusty-brown hair, a beard, and a mustache. The girl was taken to a hospital where a rape examination was completed. The examination indicated that the girl received no physical injury

2

from the rape. The girl's nightgown was collected as evidence. A nurse at the hospital attached a safety pin to the right armpit of the nightgown, so that the nightgown could later be identified at trial.

In 1989, Dwayne Dail was arrested and convicted of the rape of the twelve-year-old-girl. Sometime in 2007, the Actual Innocence Commission (the commission) sought to have the girl's nightgown tested for DNA. The commission contacted the Wayne County Clerk of Court and the Goldsboro Police Department in an attempt to locate the nightgown. The commission was informed that all of the evidence from the case had been destroyed. However, the nightgown was later found in a secondary storage room at the Goldsboro Police Department. This storage room was referred to as "the bike room." The bike room is a large, concrete block reinforced room, with a concrete floor and a steel door. There are three keys to the door. Each key is held by a different crime scene officer. The bike room is not climate controlled. A majority of the evidence located in the bike room was transferred there in 2004. At that time, the evidence being transferred was labeled with a bar code. The bar codes were then entered into the police PISTOL system. However, not all of the evidence that received a bar code was added into the PISTOL system. The nightgown was found in a sealed bag, on a different shelf than the other evidence from the case. On the bag was a sticker from the Wayne Memorial Hospital, as well a bar code. At the time the nightgown was located, it had not been entered into the PISTOL system. The officer who located the nightgown later entered it into the system. DNA testing was conducted on the nightgown, and the testing revealed that Dwayne Dail was innocent. The DNA sample extracted from the nightgown was entered into the Combined DNA Indexing System (CODIS), an FBI database. The CODIS search indicated a match with the DNA profile of defendant.

On 5 May 2007, defendant was indicted for offenses against the twelve-year-old-girl. He was indicted with 1) one count of first degree burglary, 2) one count of first degree statutory sex offense, 3) one count of first degree statutory rape, and 4) one count of indecent liberties. The trial occurred during the 19 April 2010 session of Wayne County Superior Court.

In a pretrial motion, defendant sought to have the DNA evidence suppressed, based on an inadequate chain of custody of the nightgown. The trial court denied the motion to suppress. At trial, the State sought to introduce evidence of the 21 August 1987 rape of the student. Defendant objected to this evidence, and the trial court

3

> overruled defendant's objection. The student then took the stand and testified to the details of her rape. She also testified that she has a degree in speech, with an emphasis on voices and dialects, and that she could identify defendant as her assailant by his accent. Next, the State asked several questions of a police officer that elicited testimony concerning defendant's peeping tom charges. Defendant objected to this line of questioning. The trial court sustained the objection, and instructed the jury to disregard the officer's answer. Defendant then made a motion for a mistrial. The trial court denied the motion. The State called Karen Hughes, an SBI forensic DNA analyst, as a witness. Hughes testified that in her opinion, defendant was the only source of the DNA discovered on the nightgown. Defendant objected as follows:
>
>> Q. Do you have an opinion as to whether or not you can identify Mr. Neal as the person whose sperm was on the gown of [the girl] to the exclusion of every human being on earth?
>>
>> [DEFENDANT]: Objection. THE COURT: Overruled.
>>
>> A. Yes, it is my opinion that it is scientifically unreasonable to expect that the partial DNA profile obtained from the sperm fraction of the cutting from the victim's nightgown came from anyone other than William J. Neal unless he has an identical twin.
>
> During closing arguments, the State said "her (Hughes') opinion was, to the exclusion of every other human being on earth ... William Neal's sperm was on that gown, with the exception of the possibility of there being an identical twin."

Id. at *1-3.

The North Carolina Court of Appeals issued an order finding no error on October 4, 2011.

Id. at *8. Petitioner subsequently filed an appeal and petition for discretionary review to the North

4

Carolina Supreme Court, which were respectively dismissed and denied on March 8, 2012. State v. Neal, 722 S.E.2d 789 (2012).

On March 15, 2013, plaintiff initiated this action pursuant to 42 U.S.C. § 1983. On November 12, 2013, the court conducted a frivolity review of plaintiff's action pursuant to 28 U.S.C. § 1915(e)(2)(b)(i) and directed plaintiff to particularize his complaint. On December 5, 2013, plaintiff filed his amended complaint, in which he requested injunctive and monetary relief related to allegations that his constitutional rights were violated by the following defendants: Goldsboro Police Department Investigator Dwayne Dean ("Dean"), Goldsboro Police Department Investigator L.D. Bethea ("Bethea"), Goldsboro Police Department Investigator Bryant Canady ("Canady"), plaintiff's criminal defense attorney Christopher Rogerson ("Rogerson"), Executive Director of the North Carolina Center on Actual Innocence attorney Christine Mumma ("Mumma"), District Attorney C. Branson Vickory, III, Assistant District Attorney J. Michael Ricks ("Ricks"), Goldsboro Police Department Officer Robert T. Smith ("Smith"), and notary republic Diane Hamilton ("Hamilton"). In short, plaintiff complains that defendants encouraged witnesses to provide false or perjured testimony, tampered with witnesses, lost and destroyed evidence, and failed to disclose exculpatory evidence in violation of the United States Supreme Court's ruling in Brady v. Maryland, 373 U.S. 83 (1963). As relief, plaintiff requests the following:

    a)    that, an order issue enjoining the defendant(s) named herein from withholding evidence in the case for which plaintiff is now incarcerated;

    b)    that, an order issue enjoining the defendants, or their agents, from further destroying evidence obtained in the Carrington (Artis) criminal investigation;

5

> c) that, the court order defendant(s), each of them, and all of them, to pay Plaintiff Neal monetary awards for damages done him & for his sufferings, i.e.,
>
>> (i) Compensatory Awards of $50,000 for each year of incarceration for said convictions beyond his originally scheduled release date, June 2011;
>>
>> (ii) Treble Awards for the willful, malicious, punitive conduct of the defendant(s), and to deter them from repeating such acts as complained of herein;
>
> d) that, the Court have a trial by jury on all triable issues; and
>
> e) Whatever other relief the Court deems proper.

(Am. Compl. p. 40.) On May 7, 2014, the court allowed plaintiff to proceed with his claims.

On June 5, 2014, defendant Mumma filed a motion to dismiss pursuant to Rule 12(b)(6), arguing, *inter alia*, that plaintiff's claims against her should be dismissed because she is not a state actor and because plaintiff has not met his burden of pleading a claim of conspiracy. The next day, defendants Vickory and Ricks also filed a motion to dismiss pursuant to Rule 12(b)(6), arguing that plaintiff's claims against them are barred by the statute of limitations and are barred pursuant to the United States Supreme Court's ruling in Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). The motions were fully briefed.

On July 25, 2014, defendants Bethea, Canady, Dean, and Smith filed a motion to dismiss pursuant to Rule 12(b)(6), arguing that plaintiff's action is barred by both the Supreme Court's ruling in Heck and the statute of limitations. Defendants Hamilton and Rogerson both subsequently filed respective motions to dismiss also arguing that plaintiff's action is Heck and time-barred. The motions were fully briefed.

6

**DISCUSSION**

A.   Standards of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quotations omitted).

B.   Analysis

Plaintiff alleges that defendants violated his constitutional rights because they engaged in a conspiracy to facilitate witnesses' false or perjured testimony, to facilitate witness tampering, to facilitate the loss or destruction of evidence, and to withhold exculpatory evidence in violation of the United States Supreme Court's ruling in Brady v. Maryland, 373 U.S. 83 (1963). To recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, the plaintiff must show

that the underlying conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus. Heck, 512 U.S. at 486-87. The Supreme Court later clarified that Section 1983 actions are barred, no matter the relief sought, "if success in that action would necessarily demonstrate the invalidity of confinement or duration." Wilkinson v. Dotson, 544 U.S. 74, 82 (2005). In Wilkinson, the Court again emphasized that habeas corpus was indeed the exclusive remedy for state prisoners who "seek to invalidate the duration of their confinement—either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." Id. at 81–82.

All of plaintiff's claims fall within the purview of Heck because plaintiff's success on the merits would imply the invalidity of his conviction. See Skinner v. Switzer, 562 U.S. 521, __, 131 S. Ct. 1289, 1300 (2011) ("[P]arties asserting Brady violations postconviction generally do seek a judgment qualifying them for immediate or speedier release from imprisonment. . . . Accordingly, *Brady* claims have ranked within the traditional core of habeas corpus and outside the province of § 1983.") (internal citations and quotations omitted); Rankin v. Cranford, No. 5:03CV99-2-V, 2005 WL 3279983, *3 (W.D.N.C. Apr. 11, 2005) (holding that claims predicated upon having been illegally investigated, prosecuted, and convicted are barred pursuant to Heck), aff'd, 142 F. App'x 166 (4th Cir. Aug. 25, 2005); cf., Cox v. Ozmint, No. 3:12-000225, 2012 WL 1415181, at *2 (D.S.C. Mar. 19, 2012) ("Any claim for malicious prosecution. . . is barred by Heck. . . ."); Green v. North Carolina State Bureau of Investigation Crime Lab, No. 3:11cv69-GCM, 2011 WL 4074613, at *4 (W.D.N.C. Sept. 13, 2011) ("A finding for Plaintiff that [SBI Agent] Defendant Lindley committed perjury and falsified her report necessarily would imply that Plaintiff's federal conviction

8

for conspiracy to distribute and possess with intent to distribute cocaine was invalid."). In this case, plaintiff's conviction has not been reversed, expunged, declared invalid, or called into question.[1] Therefore, plaintiff's § 1983 claim is barred by Heck.

To the extent plaintiff alleges that defendants conspired to violate his constitutional rights, these conclusory allegations are not sufficient to state such a claim. Rather, to establish a civil conspiracy, a plaintiff "must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the plaintiff's] deprivation of a constitutional right . . . ." Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416, 421 (4th Cir. 1996). Conclusory allegations of a conspiracy do not demonstrate the "meeting of the mind" element and fail to state a claim. Id. at 421-23; Miller v. Demarino, No. Civ. 1:01CV183, 2002 WL 32096597, at * 3 (N.D.W.Va. Apr. 24, 2002) (finding that naked assertions of a conspiracy are not sufficient to support an action pursuant to 42 U.S.C. § 1983), aff'd, 45 F. App'x 292 (4th Cir. Sep. 10, 2002). Rather, a plaintiff "must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." Hinkle, 81 F.3d at 421. Plaintiff fails to allege facts reflecting a "meeting of the minds" between any defendants. Cf. Iqbal, 556 U.S. at 677; Twombly, 550 U.S. at 555-56. Thus, this claim fails.

Alternatively, the court finds that plaintiff's conclusory allegations are dismissed for failure to state a claim. While the liberal pleading requirements' of Federal Rule of Civil Procedure 8(a)

---

[1] Plaintiff concedes that his § 1983 claim for monetary damages is barred by Heck. (See DE 61, p. 24.) Plaintiff, however, contends that the court retains jurisdiction over his claims for declaratory and injunctive relief. However, the United States Supreme Court's ruling in Heck also applies to requests for injunctive and declaratory relief. See Wilkinson, 544 U.S. at 81-82 ("[A] state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit . . . – if success in that action would necessarily demonstrate the invalidity of confinement or its duration."); see Mobley v. Tompkins, 473 F. App'x 337, 337 (4th Cir. 2012).

9

only require a short and plain statement of the allegations, a plaintiff must offer more than conclusory allegations to support his claim. Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001). Specifically, "[t]he presence [] of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint do not support the legal conclusion." Id. at 405 n. 9. Plaintiff has not met this burden with respect to his claims, and they are, alternatively, dismissed pursuant to Rule 12(b)(6) as conclusory.

Given the fact that plaintiff in his § 1983 action attacks the validity of his conviction, the court provides plaintiff with notice, pursuant to Castro v. United States, 540 U.S. 375 (2003), that it intends to recharacterize this action as an attempt to file a motion under 28 U.S.C. § 2254. The court also notifies plaintiff of the § 2254 restrictions on second or successive motions, the one year period of limitations, and the four dates in § 2254 to be used in determining the starting date for the limitations period. See 28 U.S.C. § 2244. Plaintiff further is advised that the format of any § 2254 motion must comply with Rule 2, Federal Rules Governing § 2254 Proceedings, and Local Civil Rule 81.2 of this court.

The court permits plaintiff to file a response to the court's proposed recharacterization within 14 days from the date of this order. The court advises plaintiff that if, within the time set by the court, plaintiff agrees to have the motion recharacterized the court shall consider the motion as one under § 2254 and shall consider it filed as of the date the instant action was filed. If, however, plaintiff does not respond to this court's order or responds within the time set by the court but does not agree to have the motion recharacterized, the court will not treat it as a § 2254 motion but will dismiss this action without prejudice, without further order of the court, for the reasons set forth above.

## CONCLUSION

For the foregoing reasons, defendants' respective motions to dismiss (DE 17, 19, 31, 53, and 55) are GRANTED, and plaintiff's § 1983 claims are DISMISSED without prejudice. Plaintiff has 14 days from the date of this order to inform the court whether he would like this action converted into a § 2254 petition. The Clerk of Court is DIRECTED to provide plaintiff with the forms necessary to file a § 2254 petition.

SO ORDERED, this the 26th day of February, 2015.

*/s/ Louise W. Flanagan*
LOUISE W. FLANAGAN
United States District Judge

11